[No. 27239-0-I.    Division One.    February 24, 1992.]

TED TREPANIER, *Appellant*, v. THE CITY OF EVERETT,
ET AL, *Respondents*.

*Richard B. Sanders* and *Sanders Law Office,* for appellant.

*Bruce Jones, City Attorney,* and *James D. Iles, Assistant,* for respondents.

AGID, J. — Ted Trepanier appeals the trial court's decision affirming the City of Everett's (Everett) issuance of a determination of nonsignificance (DNS) under the State Environmental Policy Act of 1971 (SEPA). Trepanier contends that Everett failed to consider the significant adverse environmental impacts on Snohomish County that would result from the proposed zoning ordinance. We conclude that Trepanier lacks standing to challenge the DNS and therefore affirm.

After Everett received comments on its draft DNS, its planning staff prepared a revised environmental checklist, which identified no significant adverse impacts. Everett's SEPA "Responsible Official" then issued a final DNS, in which he determined that preparation of an environmental impact statement (EIS) was not required.

Trepanier, owner of a civil engineering and land use consulting firm, appealed the DNS to the Everett City Council (the Council). The Council denied his request that it direct the planning department to prepare an EIS. Trepanier sought review of the Council's decision in superior court, pursuant to a writ of certiorari. The trial court affirmed Everett's issuance of the DNS and dismissed Trepanier's claims. This appeal followed.

Trepanier contends that the Council's decision to affirm the issuance of the DNS for the new zoning code is clearly erroneous. He also argues that Everett should not have been the lead agency charged with making the threshold determination of whether an EIS is required when it was also the proponent of the project undergoing SEPA review. Because Trepanier lacks standing to appeal Everett's SEPA action, we do not reach his first contention.

▮▮ Any "person aggrieved" can obtain judicial review under SEPA. The term "person aggrieved" was intended to include anyone with standing to sue under existing law. R. Settle, *The Washington State Environmental Policy Act* § 20(b), at 248 (1987); *see also* RCW 43.21C.075(4). The courts apply a 2-part test in determining whether a person or entity has standing to challenge a SEPA determination. First, the interest that the petitioner is seeking to protect must be " 'arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question". *Save a Valuable Env't v. Bothell*, 89 Wn.2d 862, 866, 576 P.2d 401 (1978) (quoting *Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153, 25 L. Ed. 2d 184, 90 S. Ct. 827 (1970)). Trepanier alleges that Everett's new zoning code will reduce allowable densities and development potential within Everett. He therefore believes that development that cannot occur in Everett will be transferred to unincorporated Snohomish County, which will in turn cause adverse environmental impacts there. Such impacts, including an increase in traffic, air pollution, congestion and noise, are clearly within the zone of interests protected under SEPA.

Second, the petitioner must allege an " 'injury in fact,' " *i.e.*, that he or she will be "specifically and perceptibly harmed" by the proposed action.[1] *Save a Valuable Env't*, 89

---

[1] Trepanier argues that this test has been applied only in constitutional certiorari cases, decided before a statutory right to appeal under SEPA was codified in 1983. He asserts that the standing requirement in statutory certiorari cases is less stringent than it is for cases in which the sole source of appellate jurisdiction is the court's inherent and constitutional judicial review power. *See*

Wn.2d at 866; *Concerned Olympia Residents v. Olympia*, 33 Wn. App. 677, 683, 657 P.2d 790 (1983); *Coughlin v. Seattle Sch. Dist. 1*, 27 Wn. App. 888, 621 P.2d 183 (1980). In order to show injury in fact, Trepanier must present facts that show he will be adversely affected by Everett's decision not to prepare an EIS. His "affidavits [must] collectively demonstrate sufficient evidentiary facts to indicate that he will suffer an 'injury in fact' ". *Concerned Olympia Residents*, 33 Wn. App. at 683. Further, when a person alleges a threatened injury, as opposed to an existing injury, he or she must show an immediate, concrete, and specific injury to him or herself. *Roshan v. Smith*, 615 F. Supp. 901, 905 (D.D.C. 1985). If the injury is merely conjectural or hypothetical, there can be no standing. *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 688-89, 37 L. Ed. 2d 254, 93 S. Ct. 2405 (1973).

Trepanier has failed to present any evidentiary facts to show that he or his property would be injured by Everett's SEPA action.[2] In fact, the only threatened injury alleged is that several sections of the new zoning code will reduce allowable densities and development potential within

---

*Coughlin v. Seattle Sch. Dist. 1*, 27 Wn. App. 888, 893 n.1, 621 P.2d 183 (1980); *Byers v. Board of Clallam Cy. Comm'rs*, 84 Wn.2d 796, 529 P.2d 823 (1974). We see no reason, however, why the statutory standing requirements should differ from the constitutional standing test established before the statute was enacted. Standing is a *constitutional* doctrine designed to assure that the plaintiff has a direct stake in the controversy. *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 687, 37 L. Ed. 2d 254, 93 S. Ct. 2405 (1973). Therefore, we reject Trepanier's argument that the statute can confer standing when the petitioner has not met constitutional standing requirements. Further, we note that the court in *Save a Valuable Env't*, a statutory certiorari case, applied the same standing test set forth in constitutional certiorari cases. This test has been consistently applied in cases involving SEPA review.

[2]Trepanier states in his brief that he lives and works in Everett and has shown "an academic and professional interest in Everett's new zoning code on behalf of himself as well as many clients of his firm." We need not decide whether Trepanier's status as a property owner and resident of Everett are sufficient to establish standing here, because we conclude that he has not presented a factual basis for his allegation that unincorporated Snohomish County will suffer adverse impacts as a result of Everett's new zoning code.

Everett, thereby transferring growth that cannot occur in Everett to unincorporated Snohomish County. His argument is based on the unsupported assumption that reducing densities in some areas will *necessarily* result in reduced development potential within Everett to such an extent that development will be forced into unincorporated Snohomish County. Trepanier's argument is fatally flawed because his bare assertion that the new code will likely create serious adverse impacts on unincorporated Snohomish County has absolutely no factual support in the record.

Moreover, evidence presented by Everett runs contrary to Trepanier's allegations. Planning officials testified that, although the new code may reduce the development potential of certain parcels with environmentally sensitive features, developers of these parcels would be given a certain percentage of development credit for the environmentally sensitive portion of the parcel. The City also concluded that the "overall level of development permitted under the new code will not be significantly higher or lower than under the existing zoning code". Because Trepanier has presented no evidence to contradict these conclusions, his allegations of significant adverse impacts to unincorporated Snohomish County are merely speculative. *Concerned Olympia Residents*, 33 Wn. App. at 683-84 (plaintiff's bald assertion of injury is insufficient to support standing absent evidentiary facts to support it); *see also Roshan*, 615 F. Supp. at 907.

We next address Trepanier's contention that a conflict of interest exists when the proponent of the project undergoing SEPA review is also the lead agency charged with making the threshold determination of whether an EIS is required. He believes the decision-making *process* was flawed because the Everett planning department was charged with the responsibility for both drafting the proposed code and evaluating its environmental significance. He contends that the problem is compounded by the Council's review of the DNS, which allowed the Council to act upon its *own* proposed zoning code revision. We disagree.

■ ■ First, the SEPA rules provide that "[w]hen an agency initiates a proposal, it is the lead agency for that proposal." WAC 197-11-926(1). The same rule also states that, "[w]henever possible, agency people carrying out SEPA procedures should be different from agency people making the proposal." WAC 197-11-926(2). In this case, the person responsible for drafting the new code was senior planner Allan Giffen. The person charged with carrying out SEPA review was planning director Paul Roberts. Accordingly, Everett complied with the rule's requirements. Second, as Everett correctly points out, any perceived appearance of unfairness would have been cured by the fact that Trepanier had a right to administrative review before the Council. Although Trepanier claims the Council was also biased, he asserts no factual basis to support his contention. Nor is there any evidence that the Council had any knowledge of the substantive provisions or environmental impacts of the new zoning code prior to the hearing. Similarly, there is no showing that the workings of the planning department and the Council are so incestuous as to affect appellant's opportunity for a fair hearing. Absent a showing of bias or circumstances from which it may be presumed, the Council's consideration of its own proposed code does not violate the appearance of fairness doctrine. *See Christensen v. Terrell*, 51 Wn. App. 621, 632-33, 754 P.2d 1009 (1988).

Further, there is no showing either in this case or historically in the land use decision-making process that planning staff (the executive body of local government) and the Council (the legislative body) necessarily share the same views of environmental impacts. Thus, we see no reason to assume that an appeal to the Council is not an adequate means of protecting against any potential for conflict between the municipal proponent and the lead agency.[3] Finally, the right

---

[3]We encourage other jurisdictions to make sure, as Everett has done, that the individual making the threshold determination is not the person or persons actually developing or proposing the code or ordinance or reviewing the action of those individuals.

to appeal the Council's decision to superior court satisfies any due process concerns.

The trial court is affirmed.

BAKER and KENNEDY, JJ., concur.

Review denied at 119 Wn.2d 1012 (1992).